## SMITH v. STEPHENS.

### Opinion delivered February 25, 1907.

DEED—DELIVERY.—Evidence of a grantor in a deed that he handed the deed to the grantee's son with instructions to take it to the grantee, and if the grantee concluded to take the land to send the grantor the money soon, and if not to return the deed to a third person, is sufficient to prove delivery.

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*W. J. Driver,* for appellant.

1. The question as to delivery of the deed from Yount to Smith depends entirely upon the intention of the parties to the transaction, and the burden of proving that there was no delivery devolved upon appellee, Stephens.

2. The chancellor's finding on the facts is contrary to the weight of evidence, and should not be upheld.

*W. J. Lamb,* for appellee.

1. The deed from Yount to Smith was not delivered.

2. The findings of a chancellor on questions of fact will not be disturbed unless plainly contrary to the weight of the testimony.

McCULLOCH, J. Peter H. Yount and his sister, Francis Yount, who were owners of an interest in a small tract of land in Mississippi County, executed a deed on August 25, 1902, to appellant, D. A. Smith, for their interest in said land.

The same grantors subsequently executed another deed for the same land to appellee, J. W. Stephens, and the latter instituted this suit in chancery against appellant to cancel the first deed, alleging that it was never delivered to the grantee by the grantors and had wrongfully been procured and filed for record by appellant. In the complaint it was alleged that said grantors contracted to sell said land to appellant and executed the deed and placed the same in escrow in the hands of one Ashabranner to be delivered to appellant upon payment of the purchase price, but that appellant afterwards represented to Ashabranner that said grantors had authorized him to take the deed, and in that way wrongfully induced Ashabranner to surrender the deed to him.

It is undisputed that said grantors agreed to sell their interest in the land to appellant, and they executed the deed in question at their home in Missouri. Peter H. Yount brought the deed to Arkansas for the purpose of consummating the sale, and went to the place where appellant was at work. The deed was not delivered then, but the next day appellant's son went to Jonesboro with Yount and on his return delivered the deed to appellant. The case turns upon the question of fact whether the deed was delivered to appellant by authority from Yount. The consideration named in the deed was the sum of $200, to be paid cash. There were further negotiations between the parties for the purchase by appellant of an interest in some personal property for $100 to be paid later, a note to be given for that bearing interest. Appellant's son, D. B. Smith, testified that at his father's request he went to Jonesboro with Yount to borrow the money from a bank at that place to pay for the land; that he failed to get the money on account of the absence of the cashier of the bank, but that Yount gave him the deed and told him to give it to his father, the grantee, with the request to send the money as soon as convenient, and that he delivered the deed according to the instructions.

Peter H. Yount testified that the price of the land, $200, was to be paid to him by appellant's son in Jonesboro, but that it was not paid then, and he delivered the deed to appellant's son with instructions to take it back with him, and if his father concluded to take the land to send him the money soon, with the note

for the price of the personal property, and if his father did not take it to turn the deed over to Ashabranner.

His exact statement concerning the transaction is as follows:

"Q. Did you deliver the deed to D. A. Smith, the defendant?

"A. Not in person, but to his son, Dan.

"Q. What instructions did you give his son, Dan, when you delivered it?

"A. I told him that, as he would have to see his father about this trade, I would give him the deed and let him take it back with him, and if his father concluded to take the land to send me the $200 and the note I was to have right away soon; if not, for him to turn the deed over to uncle N. H. Ashabranner at Manila, and I gave him a note written on a day-book leaf, written to N. H. Ashabranner, to receive and hold the deed until I called for it.   *   *   *   *   *   *   *   *   *   *   *

"Q. When was this $200 to have been paid to you?

"A. Why, I was to be paid before I left Jonesboro.

"Q. Who agreed to pay it?

"A. It was to be paid by young Dan.

"Q. Did young Dan Smith agree to leave the deed with N. H. Ashabranner unless his father accepted the same at once and made the payment?

"A. He did not say what he would do, but this he did say, 'that I promise on my word and honor right here that this deed will not go on record until we or I hear from you.'   *   *   *

"Q. Do you mean by this that the $200 was to be paid in cash?

"A. I do, but after he said in Jonesboro that he would have to see his father, he was to pay it right away, soon."

D. B. Smith denied that Yount gave him a note or instructed him to turn the deed over to Ashabranner. Both of them testified that D. B. Smith lent Yount $5 when they separated at Jonesboro. Nearly a year later appellant sent Yount a check for the $200 and interest, after deducting the $5 lent by his son, and then filed the deed for record. This was after Yount had written to appellant informing the latter that he had been offered $400 for the land and offering to sell it to him at that price. Yount tendered the check back to appellant before the commencement of this suit. Smith was solvent at the time of the transaction and

owned property in Mississippi County of the value of fifteen thousand dollars. Yount made no inquiry of either appellant or Ashabranner to ascertain whether or not the deed had ever been delivered to the latter.

The chancellor found that Yount did not deliver the deed to appellant, and rendered a decree cancelling the deed and quieting the title in appellee.

We think the chancellor erred. Yount's own testimony shows that the deed was delivered. He attached no conditions to the delivery of the deed to appellant by his son, except to send him the money soon in the event that he accepted the deed, and to turn it over to Ashabranner in the event that appellant failed *to accept it.* The passage of the title did not depend upon the payment of the money, and no forfeiture resulted from a failure to pay the price. The burden of proof was upon appellee to show that the deed had not been delivered, and the testimony of Yount does not establish that fact. We think that the preponderance of the testimony is with appellant's version of the transaction. His son testified positively that there was an unconditional delivery of the deed, and there are circumstances which render Yount's testimony of less weight than appellant's son. The fact that appellant was solvent at the time and owned a large amount of property, that a few months later Yount wrote to appellant urging the payment of the price and never asked about the deed or inquired whether it had been turned over to Ashabranner, and the fact that he never offered to return the $5 loaned to him by appellant's son and agent, all go to show that he considered that the title had passed, and that appellant was his debtor for the price. He did not question the conveyance until the value of the land was enhanced and he was offered a better price for it.

The evidence does not justify a finding that appellee is an innocent purchaser, and he stands in no better attitude than Yount with reference to the conveyance. The decree is therefore reversed, and the cause remanded with directions to enter a decree dismissing the complaint for want of equity.